**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**NOVEMBER 1998 SESSION**

FILED

February 9, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9710-CR-00506** |
| Appellee, | ) | |
| | ) | **DAVIDSON COUNTY** |
| VS. | ) | |
| | ) | **HON. J. RANDALL WYATT, JR.,** |
| **CHRISTOPHER A. DAVIS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Attempted Second-Degree Murder) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**NILES S. NIMMO**                    **JOHN KNOX WALKUP**
306 Gay St., Suite 200               Attorney General & Reporter
Nashville, TN 37201
                                     **TIMOTHY BEHAN**
                                     Asst. Attorney General
                                     John Sevier Bldg.
                                     425 Fifth Ave., North
                                     Nashville, TN  37243-0493

                                     **VICTOR S. JOHNSON, III**
                                     District Attorney General

                                     **TOM THURMAN**
                                            -and-
                                     **KATRIN MILLER**
                                     Asst. District Attorneys General
                                     Washington Square, Suite 500
                                     222 Second Ave., N.
                                     Nashville, TN 37201-1649




OPINION FILED:_____




**AFFIRMED**




**JOHN H. PEAY,**
Judge

# **O P I N I O N**

Following a jury trial and sentencing hearing, the defendant was convicted of criminal attempt to commit second-degree murder and sentenced to ten years imprisonment. He now appeals, arguing that the evidence is insufficient to sustain his conviction. We affirm.

At trial, the victim, James Frierson, testified that on February 27, 1996, he went to Henry Short's house to drink beer and use cocaine in celebration of being drug-free for ninety days. The victim and Short called a man known as "Yo-Yo" and asked him to come to the apartment to sell them cocaine. The victim testified he bought twenty-five dollars ($25) worth of cocaine, conspicuously paying "Yo-Yo" from a large roll of money he had in his front pocket.

Approximately forty-five minutes later, according to the victim, the defendant knocked on the door of Short's apartment. The victim knew the defendant and knew that the defendant was friends with "Yo-Yo." The defendant asked the victim to come outside with him. The victim followed the defendant to the parking lot, where a car driven by Yakou Murphy, whom the victim did not know, was waiting. The defendant climbed into the car behind the driver, and the victim sat in the front passenger's seat. Immediately, the victim noticed a .38 caliber gun in Murphy's lap, thought the defendant was also armed with a gun, and began to suspect he was in danger of being robbed. According to the victim, the defendant suggested they rent a hotel room in which to party and asked the victim if he had any identification. The victim, trying to "talk [his] way out of it," told the defendant and Murphy he would go with them after he retrieved his phone from inside Short's apartment. The victim testified that once he exited the car, he told the defendant

2

and Murphy that he had changed his mind and began to walk away from them. Murphy then exited the car and called to the victim. When the victim turned to see what Murphy wanted, Murphy came at him with a gun, shooting at him twice as he tried to run away. The second shot Murphy fired hit the victim in the back.

The victim ran to Short's apartment, and Short drove him to the hospital, where he gave a description of the defendant and Murphy to the police. He also told the police that he knew the defendant. The victim testified that he initially lied to the police and at the preliminary hearing about what happened, saying that he was the victim of an attempted carjacking. He testified that he lied because he was afraid the police would not pursue his case if they thought he had been involved in a drug deal.

Murphy also testified at trial. He acknowledged that he was charged with first-degree murder, especially aggravated robbery, and criminal attempt to commit first-degree murder and was facing the possibility of life imprisonment or life imprisonment without parole. He stated that he agreed to testify in this case and two other trials in the hopes of gaining favorable consideration on the amount of prison time he would be required to serve. Murphy testified that he was at the defendant's apartment on the evening of February 27, 1996, when the defendant retrieved a .38 caliber pistol from his bedroom, gave it to Murphy, and asked him to accompany him to an undisclosed location. According to Murphy, the defendant himself was armed with a .45 caliber automatic pistol. Murphy testified that they left the defendant's apartment in a car. By following the directions the defendant gave him, Murphy drove to the parking lot outside of Short's apartment. Once there, the defendant went inside one of the apartments, returning shortly thereafter with the victim, whom Murphy did not know. Murphy testified that they sat in the car---the defendant in the back seat behind him and the victim in the front

3

passenger seat---and discussed getting a hotel room. According to Murphy, when the victim then left the car and began to walk away, the defendant told Murphy that the victim had "some money" he needed and ordered Murphy to exit the car and "get him." Murphy testified he called to the victim, who stopped momentarily, but began running when he realized that Murphy was pointing a gun at him. According to Murphy, the defendant then ordered him to shoot the victim. Murphy testified he fired two shots at the victim, but when they realized the victim had escaped, they fled.

Murphy also testified that a man known as "Yo-Yo" was "a regular" at the defendant's apartment and that the defendant's purpose in visiting the victim that evening was to rob him. Moreover, Murphy testified that after the shooting, the defendant instructed him that if he were arrested, he should tell the police that he shot the victim because the victim had attempted to steal drugs from him. When Murphy was arrested, this was the story he initially told police.

Detective Alfred Gray of the Metropolitan Police Department testified that on the morning of February 28, 1996, he visited the defendant's apartment. According to Detective Gray, as he was talking with the defendant's roommate, the defendant, who was armed, entered the apartment with three individuals, including the man known as "Yo-Yo." Detective Gray testified that they ran back out the door, and while doing so, the defendant reached for his weapon, which was a .45 automatic pistol.

A subsequent search of the defendant's apartment disclosed an empty .38 caliber box in the closet of the defendant's bedroom; the .38 caliber pistol was not recovered from the defendant's apartment. The bullet taken from the victim's body was a ".38, .357 caliber lead bullet," which could have been fired from either a .38 caliber

4

pistol or a .357 caliber pistol. After the victim was released from the hospital, he identified the defendant and Murphy in separate photographic line-ups.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn from the proof. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning witnesses' credibility, the weight and value given to evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id.

The defendant argues that the State failed to prove the requisite intent to support an attempted second-degree murder conviction. Second-degree murder is the "knowing killing of another." T.C.A. § 39-13-210(a)(1). Attempted second-degree murder can be proven by evidence that the defendant knowingly acted with the intent to kill his or her target and that the defendant's actions constituted "a substantial step toward the commission" of the murder. T.C.A. § 39-12-101(a)(3).

Here, the evidence showed that Murphy "deliberately aimed a pistol and shot several times at his intended victim," which is sufficient proof to support a conviction for attempted second-degree murder. State v. Frederick R. Porter, No. 03C01-9606-CC-00238, Anderson County (Tenn. Crim. App. filed October 24, 1997, at Knoxville). That the defendant did not pull the trigger himself is not fatal to the State's case. The proof

5

showed that the defendant, who was himself armed with a .45 caliber automatic pistol, supplied Murphy with a .38 caliber pistol and instructed him to shoot at the victim because the victim had money the defendant needed. By aiding Murphy and directing him to shoot at the victim while acting with the intent to benefit in the proceeds of the offense, the defendant became criminally responsible for Murphy's actions. T.C.A. § 39-11-402(2).

The defendant contends that the only evidence of the defendant's intent to participate in the shooting was Murphy's testimony that the defendant instructed him to shoot the victim. The defendant argues that because Murphy's testimony is uncorroborated, there is insufficient evidence of intent. This argument must fail, however, as an accomplice's testimony need not be corroborated as to every detail; it need only be corroborated as to some fact that "tend[s] to connect the defendant with the commission of a crime." Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 217 (1895). Here, the victim's testimony describing the shooting is almost identical to Murphy's account of the shooting. Both the victim and Murphy identified the defendant as an armed participant in the shooting, even though the defendant himself did not pull the trigger. Moreover, Murphy's testimony that the defendant retrieved from his bedroom the .38 caliber pistol Murphy used in the shooting was corroborated by the discovery of a .38 caliber box in the defendant's bedroom and the testimony that the victim had been shot with a bullet from either a .38 or a .357 caliber pistol. Murphy's testimony was more than sufficiently corroborated.

We must note that in the defendant's brief, he specifically declines to address the issue of criminal responsibility for Murphy's actions because the "jury was not instructed" on the issue of criminal responsibility and because the court minutes do not

specifically reflect that the jury found the defendant criminally responsible for Murphy's actions. Contrary to defense counsel's representation, however, the transcript plainly reflects that the jury was in fact instructed on the issue of criminal responsibility. Moreover, one would expect court minutes to reflect only the sum of the jury's verdict, as did the one in this case, rather than each specific finding made by the jury in arriving at its verdict. Simply because the court minutes do not reflect that the jury returned a guilty verdict because it found the defendant was criminally responsible for Murphy's actions does not mean that the jury did not in fact come to such a determination. Rather, because the jury heard evidence that Murphy pulled the trigger and was instructed that the defendant could be criminally responsible for Murphy's actions, the jury's returned verdict of guilt is itself a determination that the defendant was criminally responsible for Murphy's actions.

In sum, the State presented sufficient evidence of intent and sufficient corroboration of Murphy's testimony. Accordingly, the defendant's challenge to his conviction must fail. The trial court's judgment is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
JERRY L. SMITH, Judge

7